SHAKUR D. GANNAWAY,          :     CIVIL ACTION
          Plaintiff,         :     NO. 09-4501
                             :
                             :
                             :
     v.                      :
                             :
BERKS COUNTY PRISON, et al., :
          Defendants.        :


M E M O R A N D U M


EDUARDO C. ROBRENO, J.                     MARCH 29, 2011


## I.    INTRODUCTION

On October 1, 2009, pro se Plaintiff Shakur D. Gannaway ("Plaintiff") initiated this action under 42 U.S.C. § 1983 seeking damages against several Berks County Prison officials (collectively "Defendants"). In his complaint and "amendment complaint," Plaintiff asserts a potpourri of claims, complaints, and allegations stemming from a variety of alleged constitutional deprivations. For example, Plaintiff asserts that he was denied sanitary and appetizing food, a mattress, the ability to adequately practice his religion, and proper library access. Plaintiff's hand-written pleadings are lengthy, ranting, and

overall difficult to decipher; however, the Court has undertaken the task of sifting carefully through Plaintiff's complaints.

For the reasons set forth below, the Court will grant Defendants' motion for summary judgment.[1]

## II.  BACKGROUND

On May 25, 2009, Plaintiff was committed to Berks County Prison to await the disposition of robbery charges.  On September 3, 2009, a search of Plaintiff's possessions indicated that he had destroyed prison property.  A misconduct citation was issued, and Plaintiff was placed in administrative segregation. (Def. Mot. for Summ. J. at Exh. 2-Misconduct Citation, Exh. 3-Administrative Seg. Report.)  Disciplinary charges were filed, a hearing was held, and Plaintiff was ordered to serve fifteen days in the disciplinary unit ("D-Unit").  (Id. at Exh. 4-Report of

---

[1]  The Court recognizes that the following claims have not been exhausted: (1) lack of a mattress for more than nine hours; (2) lack of access to the library and provision of adequate library materials; (3) lack of sanitary food; (4) lack of proper medical care; (5) lack of ability to attend religious services; (6) lack of timely mail delivery; and (7) lack of a functioning toilet.  However, for the sake of completeness, the Court will review the majority of these claims as if exhausted.  See 42 U.S.C. 1997e(c)(2) ("In the event that a claim is, on its face, frivolous, malicious, [or] fails to state a claim upon which relief can be granted . . . the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.")  As to those non-exhausted claims which the Court does not review, summary judgment is granted but Plaintiff is granted leave to pursue these claims after exhausting administrative remedies.

Disciplinary Proceedings.)  Plaintiff filed an appeal from the
disciplinary charges, but the appeal was denied.  (Id. at Exh. 5-
Appeal Form.)

While in the D-Unit, Plaintiff filed a grievance
protesting the D-Unit's food and mattress restrictions.  These
restrictions are part of a Behavior Modification Plan that was
announced to staff and inmates on or about June 8, 2008 via a
memorandum.  Staff and inmates were instructed to review the
updated Disciplinary Orientation form which outlines the
restrictions.  (Id. at Exh. 8-Memo to Staff and Inmates.)   In
his grievance, Plaintiff argued that such restrictions constitute
cruel and unusual punishment.  (Id. at Exh. 7-Inmate Comm. Form.)
This is the only grievance relating to the mattress restrictions.
Plaintiff never filed a grievance indicating that the mattress
restriction is cruel and unusual as to him because he suffers
from back problems.  (Pl.'s Dep. at 146:1-7.)

On November 24, 2009, Plaintiff received his second
misconduct citation while being housed with the general
population.  Plaintiff was issued this citation for not taking
his medication in front of the nurse who provided the medication.
(Def. Mot. for Summ. J. at Exh. 18-Misconduct Citation.)  When
Plaintiff did not obey the nurse's instruction to swallow the
medicine, a corrections officer approached Plaintiff and asked to
see inside Plaintiff's mouth to determine if Plaintiff swallowed

the medicine.  Plaintiff refused and swore at the corrections

officer.  (Id.)  In his deposition, Plaintiff admitted that he

was aware the prison had a policy requiring all medication taken

off the cart to be taken in front of medical staff.  (Pl.'s Dep.

at 142:22-24; 143:1-7; 274:22-24; 275:1-3.)

As a result, Plaintiff was charged with refusal of

orders and abusiveness.  On November 25, 2009, a hearing was held

on these charges and Plaintiff was found guilty and placed in the

D-Unit for twenty-two days.  (Def. Mot. for Summ. J. at Exh. 20-

Report of Disciplinary Proceedings.)  In response, Plaintiff

filed a two page appeal claiming that the discipline was

harassment due to his pending lawsuit against the prison and its

employees.  Additionally, Plaintiff claimed that the prison was

racist and was starving him while he was in the D-Unit because

the nutra-loaf made him nauseous.  (Id. at Exh. 21-Appeal Form.)

On December 15, 2009, Plaintiff was issued his third

misconduct citation for filing numerous grievances and emergency

grievances concerning his mail's handling because prison

authorities had already addressed this matter and warned

Plaintiff that he should not file any more grievances on the

matter.  (Id. at Exh. 23-Misconduct Citation.)  Plaintiff was

provided a hearing on the charges of refusal of orders and

harassment by communication.  (Id. at Exh. 27-Appeal Form.)

Plaintiff was found guilty, and he filed an appeal.  On January

2, 2010, Plaintiff was issued his fourth misconduct citation for refusal of orders and disturbance after refusing to clean up a toilet overflow in his cell. (<u>Id.</u> at Exh. 30-Misconduct Citation.) Following a hearing, Plaintiff was placed in the D-Unit, and he appealed these charges. (<u>Id.</u> at Exh. 32-Appeal Form.)

Plaintiff also filed many grievances relating to his medical condition. On November 23, 2009, Plaintiff filed an emergency grievance requesting to be sent to an outside hospital for X-rays. The medical administrator responded to this grievance reminding Plaintiff that when he had the same complaint a few months prior, he received a work-up which came back negative. (<u>Id.</u> at Exh. 43-Grievance and Response.) During his deposition, Plaintiff requested outside treatment for internal and external injuries and stated that such care was necessary because the medical department at Berks County Prison is inadequate. (Pl.'s Dep. at 231:14-24, 232:1-4.) Plaintiff has been treated by medical providers at the prison on an inordinate number of occasions and the prison medical unit has more than a hundred pages of notes concerning Plaintiff's treatment. (Def. Mot. for Summ. J. at Exh. 45-Medical Records.)

Plaintiff has filed numerous other grievances. As to these many other grievances, Plaintiff never appealed the denial of his grievances relating to lack of access to the law library,

lack of adequate material in the library, lack of sanitary food, and alleged tampering with mail and untimely delivery of mail.

Plaintiff's original complaint was filed on February 2, 2010, and he filed an amended complaint on March 23, 2010. Subsequently, Defendants filed a motion to dismiss, which was denied on March 25, 2010. Thereafter, Defendants were ordered to depose Plaintiff and file a motion for summary judgment. Shortly after Defendants deposed Plaintiff, they filed their motion for summary judgment, and the Court held a telephone conference to determine if Plaintiff needed additional discovery. On November 23, 2010, Plaintiff filed a response to Defendants' motion for summary judgment. Defendants' motion is now ripe for review.

For a myriad of reasons, Plaintiff alleges that the prison and its officers violated many of Plaintiff's constitutional rights. After a close examination of Plaintiff's complaints and the discovery materials of record, the Court finds that Plaintiff's claims are either legally insufficient or unsupported by the record. Consequently, Defendants' motion for summary judgment will be granted.

## III. DISCUSSION[2]

---

[2]     Plaintiff has alleged numerous claims against Defendants, many of which are discussed in this memorandum. However, because of an entire lack of factual support, some are frivolous and do not warrant discussion (i.e., claims of homosexual advances and racism in the entire judicial system of

_____A._____Summary Judgment Standard

_____Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)).

_____B._____42 U.S.C. § 1983 Standard

Section 1983 provides a cause of action for an

_____

Berks County).

individual whose constitutional or federal rights are violated by those acting under color of state law.[3]  <u>See</u> <u>generally</u> <u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273, 284-85 (2002).  The threshold inquiry in a § 1983 suit is whether the Plaintiff has been deprived of a right "secured by the Constitution and laws" of the United States.  <u>Baker v. McCollan</u>, 443 U.S. 137, 140 (1979).  Absent a violation of a right secured by the Constitution or the laws of the United States, there can be no cause of action under § 1983.  <u>Reichley v. Pa. Dep't of Agric.</u>, 427 F.3d 236, 244 (3d Cir. 2005) (citing <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988)).  As a starting point, therefore, the Court must determine whether Plaintiff was, indeed, deprived of any rights secured by the Constitution or laws of the United States.

C.  <u>Alleged Deprivations of Plaintiff's Fifth and Fourteenth Amendment Rights</u>

---

[3]     Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

8

Several of Plaintiff's claims indicate that he believes he was subject to cruel and unusual punishment. Plaintiff was awaiting trial during the time period involved in the complaint. As such, he was a pre-trial detainee. Due to his pre-trial detainee status, Plaintiff's constitutional claims are analyzed under the Due Process Clause of the Fifth and Fourteenth Amendments rather than the Eighth Amendment. Fuentes v. Wagner, 206 F.3d 335, 344 (3d Cir. 2000). However, when analyzing conditions of confinement claims for pre-trial detainees, courts utilize the jurisprudence developed under the Eighth Amendment. Hubbard v. Taylor, 399 F.3d 150, 165-66 (3d Cir. 2005).

The cruel and unusual punishment clause of the Eighth Amendment proscribes punishments that "'involve the unnecessary and wanton infliction of pain, or are grossly disproportionate to the severity of the crime.'" Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 417 (3d Cir. 2000) (quoting Rhodes v. Chapman, 452 U.S. 337, 346 (1981)). In Rhodes, the Supreme Court stated that prison conditions amount to cruel and unusual punishment if they cause "unquestioned and serious deprivations of basic human needs . . . [that] deprive inmates of the minimal civilized measure of life's necessities." Rhodes, 452 U.S. at 347. "To demonstrate a deprivation of [] basic human needs, a Plaintiff must show a sufficiently serious objective deprivation, and that a prison official subjectively acted with a sufficiently

culpable state of mind, i.e., deliberate indifference." <u>Tillman</u>,

221 F.3d at 418 (emphasis added).  Keeping these standards in

mind, the Court will evaluate each alleged instance of cruel and

unusual punishment to determine whether there are any genuine

issues of material fact for a jury to consider.[4]


### 1.    Nutra-Loaf Diet in Disciplinary Confinement

Defendants' motion for summary judgment will be

granted in its entirety as to this claim because Plaintiff cannot

establish that being served nutra-loaf while in the D-Unit is

cruel and unusual punishment.  When Plaintiff was placed in the

D-Unit he was fed a nutra-loaf diet in accordance with prison

rules.  At his initial prison orientation, Plaintiff was informed

that if he was placed in the D-Unit he would be subject to

various dietary and other restrictions.  Moreover, Plaintiff was

informed as to when and how often nutra-loaf would be on the meal

plan.  These policies are reiterated in Plaintiff's D-Unit

orientation handbook. (Pl.'s Dep. at 202:3-11; Def. Mot. for

Summ. J. at Exh. 8-D-Unit Orientation Form Listing Restrictions.)

In Plaintiff's complaint, he makes various arguments as

to why the serving of nutra-loaf is cruel and unusual punishment.

Plaintiff's main complaint is that he was effectively starved

---

[4]    As discussed above, the Court undertakes this analysis
viewing the facts in the light most favorable to Plaintiff.

while in the D-Unit because he was fed nutra-loaf five days a week, but he could not eat it because it made him sick. (Pl.'s Dep. at 144:20-24 (discussing weight loss).) Plaintiff's assertion that he was starved by Defendants is negated by his own testimony because he admits that he was, indeed, served the nutra-loaf while in the D-Unit—he simply did not eat it because he thought it was unappetizing and it made him nauseous. (Id. at 203:23-24.)

"In the context of an inmate's diet, the Eighth Amendment requires only that inmates be provided food that is adequate to maintain health, and served in a sanitary manner, not that food be appetizing." Maldonado v. McFaden, No. 94-1477, 1994 U.S. Dist. LEXIS 16837, at *11 (E.D. Pa. Nov. 23, 1994); see also Collins v. Klotz, No. 92-3772, 1994 U.S. Dist. LEXIS 8980, at *13-14 (E.D. Pa. July 1, 1994). Various courts have found that "the replacement of an inmate's diet with a food loaf that [is] nutritionally similar or identical to the inmate's regular diet [does] not violate the Eighth Amendment." Hinterlong v. Hill, No. 05-5514, 2006 U.S. Dist. LEXIS 54952, at *16 (E.D. Pa. Aug. 8, 2006) (citing Maldonado, 1994 U.S. Dist. LEXIS 16837, at *12-14; Collins, 1994 U.S. Dist. LEXIS 8980, at *4 n. 3, *14). In Maldonado, the court held that "[a] temporary food loaf diet that fully comports with the nutritional and caloric requirements of [an inmate's] specific dietary needs does not constitute an

11

extreme deprivation denying the minimal civilized measure of life's necessities. [The inmate's] distaste for the unappetizing food loaf diet, while understandable, is not, by itself, constitutionally actionable." 1994 U.S. Dist. LEXIS 16837, at *14.

Although Plaintiff alleges that he did not enjoy eating nutra-loaf and that it made him sick, he never states that the food presented an immediate danger to his health or well-being. Additionally, Defendants point out that Plaintiff never alerted either Warden Wagner or his Deputies of the fact that Plaintiff threw-up after eating the nutra-loaf. Plaintiff does not controvert this evidence. Moreover, Plaintiff does not allege that he suffered any medical conditions or other adverse consequences as a result of eating the nutra-loaf, and his medical records do not reveal any such issues. As such, neither the Warden nor his Deputies could have fed Plaintiff nutra-loaf with the culpable state of mind necessary to make out a claim for cruel and unusual punishment. Therefore, Defendants' motion for summary judgment will be granted as to this claim.[5]

_____

[5] In his deposition, Plaintiff claims that the canteens the nutra-loaf are transported in are unsanitary and have a nauseous scent. Plaintiff never filed a grievance relating to the canteens or the smell of the food. Thus, he has not exhausted administrative remedies for this claim and it will not be entertained. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

12

2. <u>Medical Care</u>

Plaintiff testified that when he arrived at the prison he had pain in his back, chest, shoulder, and teeth. (Pl.'s Dep. at 87:14-23.) Plaintiff claims that he has internal and external injuries and should be provided outside care for these injuries. (<u>Id.</u> at 231:14-24, 232:1-24.) Plaintiff wants outside medical treatment because he does not believe the prison medical department has competent professionals. (<u>Id.</u>) Plaintiff admits, however, that he has seen medical staff at the prison thirty to forty times, and he states that the prison medical staff is treating his conditions "the best way -- they tending to them the way they have always attended to them." (<u>Id.</u> at 235:19-24, 265:6-10.) Nevertheless, Plaintiff believes he should be provided outside care because the doctors at West Reading Hospital are more qualified. (<u>Id.</u> at 267:7-19.) Plaintiff claims that the prison's denial of outside medical care is cruel and unusual punishment.

Plaintiff has not provided any grievances or inmate communications forms relating to his medical care. (<u>Id.</u> at 271:13-24.) At his deposition, Plaintiff stated that he did not have copies of the medical grievances he allegedly filed because

---

administrative remedies as are available are exhausted.").

he "most likely" sent them to the Judge.  (Id. at 272:2-5.)  The
Court is not in receipt of Plaintiff's prison grievances, and
Plaintiff has not put forth any other evidence to establish that
he exhausted administrative procedures.  Consequently, this issue
is not properly before the Court.  See 42 U.S.C. § 1997e(a)
(discussing exhaustion of remedies).

  The Court, nevertheless, considers the issue, and
concludes that Plaintiff's claim fails.  To establish that the
denial of outside medical care amounts to cruel and unusual
punishment, Plaintiff must present facts or omissions
sufficiently harmful to evidence deliberate indifference to the
Plaintiff's serious medical needs.  Estelle v. Gamble, 429 U.S.
97, 106 (1976).

> [T]his test affords considerable latitude to prison
> medical authorities in the diagnosis and treatment of
> the medical problems of inmate patients.  Courts will
> disavow any attempt to second-guess the propriety or
> adequacy of a particular course of treatment . . .
> [which] remains a question of sound professional
> judgment.  Implicit in this deference to prison medical
> authorities is the assumption that such an informed
> judgment has, in fact, been made.

Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d
Cir. 1979).  Plaintiff must be able to show acts or omissions on
the part of Defendants which amount to deliberate indifference of
serious medical needs.  "In applying this standard courts have
consistently rejected Eighth Amendment claims where an inmate has
received some level of medical care."  Clark v. Doe, No. 99-5616,

2000 U.S. Dist. LEXIS 14999, at *8 (E.D. Pa. Oct. 13, 2000).  An
inmate's disagreement with prison medical staff about the kind of
treatment received has generally not been held to violate the
Eighth Amendment.  <u>Id.</u>

In the instant case, Plaintiff cannot establish that
anyone at the prison was, or is, deliberately indifferent to his
serious medical needs by merely arguing that he disagrees with
the medical staff's choice of treatment.  Plaintiff has not put
forth any evidence to establish that the prison's medical
department or individual employees were deliberately indifferent
to Plaintiff's alleged serious medical condition.  In fact,
Plaintiff acknowledges that he is seen by the medical department
every day, and that the medical department does the best it can
given its resources.  (Pl.'s Dep. at 265:1-24.)  The Court will
not second guess the treatment provided by the prison.
Accordingly, Defendants' motion for summary judgment will be
granted as to this claim.

### 3.  <u>Mattress Restrictions</u>

Next, Plaintiff alleges that he was subject to cruel
and unusual punishment because his mattress was removed from his
cell for sixteen hours a day.  (<u>Id.</u> at 214:2-6.)  Plaintiff
argues that he should have been given more mattress time because
he has back problems.  (<u>Id.</u> at 146.)  Additionally, Plaintiff
states that he sleeps more than nine hours because, when in the

D-Unit, there is nothing else to do since he is not provided a television and he gets tired of drawing. (Id. at 124:2-20.) Plaintiff admits that he was advised of the regulations regarding the mattress restrictions in the D-Unit via his orientation handbook. (Id. at 202:3-11; Def. Mot. for Summ. J. at Exh. 8-D-Unit Orientation Form Listing Restrictions.)

Although Plaintiff suggests that he should have been given special consideration due to his back problems, when asked if he filed a grievance with medical regarding his back problems and his need for a mattress for more than nine hours, Plaintiff stated that the prison already knew he had back problems and he did not have to tell them such information. (Pl.'s Dep. at 146:1-7.) Consequently, Plaintiff did not exhaust his administrative remedies in connection with this claim. See 42 U.S.C. § 1997e(a) (requiring exhaustion of administrative remedies).

Nevertheless, the Court considers the issue and finds that the removal of Plaintiff's mattress during the day does not amount to cruel and unusual punishment. When in the D-Unit, Plaintiff is provided his mattress for nine hours at nighttime for purposes of sleeping. During the day, it is removed for all D-Unit prisoners as part of a behavior modification plan. Removal of the mattress during daytime hours does not deprive Plaintiff of a basic need. Moreover, there is no medical evidence indicating that Plaintiff's back condition worsened

16

because he was not provided his mattress more than nine hours a day while on the D-Unit.  Consequently, Defendants will be granted summary judgment on this claim.

        4.   Discipline for Refusing to Swallow Medicine in the Presence of a Nurse

        Plaintiff challenges the Prison's decision to place him in disciplinary confinement after he refused to swallow medicine that he was given from a nurse's cart.  During this incident, Plaintiff walked away from a nurse without swallowing his medication and was approached by a corrections officer and asked to open his mouth.  In response to the corrections officer's request, Plaintiff shouted profanities.  (Def. Mot. for Summ. J. at Exh. 18-Misconduct Citation; Exh. 19-General Report Form.) This behavior formed the basis for the misconduct charge of refusal of orders and abusiveness, which was issued on November 24, 2009.  Plaintiff was given a hearing on November 25, 2009, and after the hearing he was placed in the D-Unit for twenty-two days.  (Id. at Exh. 20-Report of Inmate Disciplinary Proceedings.)  Following the hearing on November 25, 2009, Plaintiff wrote an appeal stating that he was only told to open his mouth as a form of harassment due to his lawsuits against the prison.  Additionally, Plaintiff stated the prison was racist. (Id. at Exh. 21-Appeal Form.)

        Plaintiff has not provided any evidence to indicate

that the prison was attempting to harass him by telling him to open his mouth after taking medicine. In fact, Plaintiff's accusation is belied by his statement that, at the time of the incident, he knew that Berks County Prison passed a policy that required medication taken off carts to be taken in front of medical staff. (Pl.'s Dep. at 142:22-24, 143:1-7, 274:22-24, 275:1-3.) Consequently, the discipline imposed was appropriate and nothing in the record indicates that the discipline was imposed for any reason other than the fact that Plaintiff did not abide by the rules. As such, Plaintiff cannot establish that the decision to send him to the D-Unit was cruel and unusual and Defendants' motion for summary judgment will be granted.

### 5. Discipline for Refusal to Clean-Up Toilet Overflow

Next, Plaintiff challenges his placement in disciplinary confinement for refusing to clean up a toilet overflow in his cell.[6] (Id. at 290:1-24.) Plaintiff was ordered by a corrections officer to clean up the upstairs and downstairs areas affected by his toilet overflowing. When Plaintiff did not comply with this order, he was issued a citation and a hearing

---

[6] In his deposition, Plaintiff states that he was confined to his cell for three days while his toilet was blocked. Plaintiff suggests that this amounted to cruel and unusual punishment; however, such a claim is not proper for the Court to address given that Plaintiff admits he did not file any grievances as to this particular claim. (Pl.'s Dep. at 293:10-11.)

was held on the matter.  (Id.)  On January 4, 2010, Plaintiff was placed in segregation for seventeen days.  (Def. Mot. for Summ. J. at Exh. 31-Report of Inmate Disciplinary Proceedings.)  Based on the facts of record, Plaintiff was placed in the D-Unit for failure to comply with orders.  Plaintiff has not provided any evidence to establish an improper animus behind the decision to place him in the D-Unit.  Additionally, Plaintiff fails to show that he was deprived a basic need amounting to cruel and unusual punishment.  The facts of record indicate that Plaintiff's toilet was blocked and that he refused to take care of the matter even though he was given a plunger and materials to do so.  Consequently, it was not cruel and unusual punishment to place Plaintiff in the D-Unit for failure to comply with orders.  Defendants' motion for summary judgment will be granted as to this matter.

D.    Alleged Deprivation of Plaintiff's First Amendment
      Rights

Plaintiff's assertions regarding violations of his First Amendment rights are meritless.  First, Plaintiff states that his First Amendment rights were infringed when a corrections officer stopped him while he was on his way to a Muslim service and told him to go back to his cell because he was being disorderly and rowdy in the hallways.  (Pl.'s Dep. at 137:16-20; 139:9-23.)  The corrections officer then wrote Plaintiff up for

being disorderly and rowdy.  Plaintiff acknowledged that he never appealed the misconduct write-up.  (Id. at 140:1-7.)  Since Plaintiff concedes that he failed to exhaust administrative remedies as to this incident, this claim is not ready for judicial review.  See 42 U.S.C. § 1997e(a) (discussing exhaustion of administrative remedies).

Second, Plaintiff alleges that the nutra-loaf he was fed while in the D-Unit was offensive to his religious beliefs. (Pl. Amended Comp. at 4.)  In particular, Plaintiff claims that his religious beliefs were offended when he was given nutra-loaf, rather than a sabor bag, to break the fast for Ramadan. Plaintiff explained that a sabor bag consists of cereal, doughnuts, dates, raisins, or fruit.  (Pl.'s Dep. at 302:7-13) Plaintiff concedes that ingesting the contents of a sabor bag is not part of a religious norm and is simply food provided to the general prison population in order to break the fast.  (Id. at 301:11-13.)

Since Plaintiff concedes that eating the contents of a sabor bag is not part of his religious beliefs, depriving Plaintiff of the sabor bag plainly does not deny Plaintiff from his ability to exercise his religion.  Additionally, Plaintiff's general complaint that the nutra-loaf is offensive to his religion is belied by the record.  After consultation with an Islamic religious leader in the Reading area, the prison's chaplain approved the nutra-loaf as appropriate for the fast.

20

Indeed, according to the chaplain and kitchen staff, the diet is appropriate for Ramadan and approved by the Islamic Center of Reading. (Def. Mot. for Summ. J. at Exh. 11-14-Memo re: Islamic Fast of Ramadan, Declaration of Chaplain, Declaration of Kitchen Supervisor.) Plaintiff has not provided any evidence to the contrary other than bare assertions. Based on the aforementioned, Plaintiff has not stated a violation of his First Amendment rights and Defendants' motion will be granted.

E.   <u>Alleged Deprivations of Plaintiff's Due Process Rights</u>

Plaintiff claims that his due process rights were violated because he was not provided, in a timely fashion, materials necessary to file a petition for habeas. Also, Plaintiff claims his rights were violated because he was not provided unfettered access to the law library.

In support of these allegations, Plaintiff testified that he filled out an inmate communication form requesting materials for his habeas petition and, in return, he was provided ten sheets of paper and a habeas book. Plaintiff states that it took three weeks for him to get this material. (Pl.'s Dep. at 116-120.) The dates on the forms, however, indicate that it took three days. Plaintiff admits that he was able to file his habeas petition, but he claims it was deemed untimely and denied. (<u>Id.</u> at 119:8-16.) Plaintiff does not provide any evidence substantiating his claim that the petition was denied as

untimely, nor does he provide evidence supporting his allegation that it took longer than three days for him to receive his requested materials.

Even construing Plaintiff's complaint and deposition generously and resolving all doubts in his favor, as mandated under Rule 56, the Court finds that Plaintiff has not sufficiently alleged facts to support an access claim. In access claims, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." Christopher v. Harbury, 536 U.S. 403, 415 (2002). Moreover, "when the access claim (like this one) looks backward, the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." Id. Even assuming there is truth to Plaintiff's conclusory contention that it took three weeks for him to get his requested materials, Plaintiff has not sufficiently pled or provided any evidence from which the Court could determine whether the underlying habeas petition has merit. Consequently, Defendants' motion for summary judgment will be granted as to this claim.

Moreover, Plaintiff testified that he should be allowed library access seven days a week. (Pl.'s Dep. at 187:20-24, 333:19-24.) Plaintiff's claim is without merit because prisons can limit access to Constitutionally protected rights if the

prison determines that limits are necessary to further legitimate penal interests so long as the limits do not "substantially burden" the prisoner's rights.  <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 407 (1989).  Plaintiff has not provided facts or testimony suggesting that he suffered a substantial burden in his ability to file complaints with the Court due to a lack of library access.  Consequently, summary judgment will be granted.

<u>          2.   Withholding or Tampering with Mail and Taking</u>
<u>               Account Funds</u>

Plaintiff alleges that his mail was mishandled and his prison account depleted without due process of law.  Plaintiff, however, cannot withstand a motion for summary judgment on these allegations because he does not provide any facts to support the proposition that there is a policy or practice on the part of the prison to mishandle mail or tamper with monetary accounts.  Additionally, he cannot establish individual liability because there is no allegation or evidence that any Defendant had a role in opening, withholding, or tampering with Plaintiff's mail or account.  <u>See</u> <u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005) (requiring assertion of personal involvement).  Consequently, Defendants' motion for summary judgment will be granted on this point.

E.   <u>Retaliation</u>

Plaintiff states that he was punished on numerous occasions because he filed many grievances and a lawsuit against the prison and many of its workers. In particular, Plaintiff points to a misconduct citation he received, on December 15, 2009, for filing repetitious grievances and emergency grievances. At least eleven similar grievances and communications are referred to in the misconduct citation. The prison addressed the subject of Plaintiff's repetitive complaints on numerous occasions and warned Plaintiff that he must stop filling the same grievances. (Def. Mot. for Summ. J. at Exh. 23-Misconduct Citation.) One such grievance Plaintiff refers to involves Defendant Lt. Castro. Plaintiff claims that Lt. Castro lied to Plaintiff about Plaintiff's inmate account, and argues he was punished because Lt. Castro was named as a Defendant in one of Plaintiff's lawsuits. (Id. at Exh. 27-Appeal Form.)

To make out a claim for retaliation, a prisoner must prove three things: (1) the prisoner was engaged in constitutionally-protected activity; (2) the prisoner, at the hands of the state actor, suffered an adverse action "'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights'"; and (3) the protected activity engaged in was a substantial or motivating factor in the state actor's decision to take adverse action. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)(quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). Filling a lawsuit is within the ambit of the

First Amendment's protections.  Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003).

Plaintiff claims that his filing of a lawsuit resulted in adverse action by the Defendants.  To survive summary judgment, Plaintiff must produce enough evidence from which a reasonable jury could conclude the adverse action was taken in retaliation for the exercise of the protected right.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).  Plaintiff cannot survive summary judgment because he has not presented enough evidence for a fact finder to reasonably conclude that Plaintiff's filing of a lawsuit was a substantial or motivating factor in Defendants' actions.

Plaintiff disregards the fact that all the evidence of record indicates that he was disciplined for filing duplicative and harassing complaints.  Moreover, Plaintiff's only claim of retaliation is against Lt. Castro and, although Lt. Castro issued the misconduct order at issue, the misconduct order was upheld by Warden Wagner, an individual not involved in any lawsuits with Plaintiff.  (Def. Mot. for Summ. J. at Exh. 28-Appeal Decision.) Also, Defendants have pointed to facts of record indicating that misconduct citations for abuse of the grievance process is proper.  The Inmate Handbook provides a definition of "Harassment by Communication."  (Id. at Exh. 6-Inmate Handbook.)  The Plaintiff's duplicative complaints are well within the bounds of this definition, thus giving Defendants adequate grounds to issue

a misconduct order.  Based on the foregoing, Defendants' motion for summary judgment will be granted in regards to this claim.

## IV.  CONCLUSION

Plaintiff has failed to point to the deprivation of a right secured by the Constitution or the laws of the United States.  Consequently, Plaintiff has failed to meet the threshold inquiry of a § 1983 cause of action, and Defendants' motion for summary judgment will be granted in its entirety.